Goss, Judge, dissenting.
I dissent because I disagree that the verdict in the 2007 indictment case ("Trial 1") barred the trial conviction for aggravated stalking in the 2008 indictment case ("Trial 2") based on the principles of double jeopardy and OCGA §§ 16-1-7 (b) and 16-1-8 (b) (1). These cases, while intertwined from the standpoint of the parties and their relationship history, involve separate acts occurring on different dates with additional evidence and witnesses presented in Trial 2 that were not part of Trial 1.
The eleven-count 2007 indictment for Trial 1 alleged events occurring between September 1, 2007, and the date of Ward's arrest on November 5, 2007. The end date of the allegations in the 2007 indictment and Trial 1 coincided with Ward being detained at gunpoint by the victim's adult nephew, Tony Lucas, until law enforcement arrived in response to his 911 call. At Trial 2, Lucas testified[1] that he found Ward's car parked out of place near his aunt's home. He blocked Ward's car with his own car, called 911, and then saw Ward, dressed in full camouflage, exiting the woods near the victim's home despite having been told not to return.[2] Ward was carrying a book bag over his shoulder. Once law enforcement arrived, they discovered that Ward was in possession of pry bars. Although Ward was acquitted in Trial 1 of ten counts spanning events between September 1, 2007, and November 5, 2007, he was convicted of Count 9, possession of tools for the commission of a crime ( OCGA § 16-7-20 ). Count 9 of the 2007 indictment charged Ward with having pry bars in his possession "with the intent to make use thereof in the commission of said crime by prying open a residence of [the victim]" on November 5, 2007. On August 13, 2009, Ward was sentenced to five years on probation with conditions. Ward did not appeal the verdict.
The 2008 indictment and Trial 2 were for an aggravated stalking charge arising from an event that took place after the November 5, 2007 arrest date in Trial 1. After Ward's arrest on November 5, 2007, the magistrate judge filed a bond order which contained specific, written conditions requiring Ward to "[h]ave no contact of a harassing, intimidating, threatening, provoking or violent nature, nor of any sort with the victim, with third parties regarding victim or any member of victim's household, or family, or with any witnesses in this case." At Trial 2, the magistrate *208 judge testified[3] that when he entered the bond order with the no-contact provisions on November 6, 2007, he did so in court in the presence of Ward. The magistrate judge testified that he explained the order to Ward, that he handed Ward a written copy of the order, and that Ward signed the order in acknowledgment. Additionally, the magistrate judge scheduled a bond conditions review hearing, which was held on November 9, 2007.
After conferring with the District Attorney's Victim's Advocate Office, the victim elected not to go into the courtroom for the November 9, 2007, hearing. However, Michele Dickens, the District Attorney's Victim's Advocate, testified at Trial 2[4] that she attended the hearing along with the victims' family members. Dickens testified that, after the bond hearing, Ward followed the victim's family out of the courtroom through the courthouse, trying to talk to them, which upset the family members. Dickens had to tell Ward that he needed to leave. The provisions in the no-contact bond order applied to the victim's family members as well.
The central event giving rise to the 2008 aggravated stalking indictment tried in Trial 2 was Ward's act of shipping the book Redeeming Love to the victim via online purchase received on December 3, 2007. This was in violation of the no-contact provisions of his bond order entered nearly a month earlier. Further, there was additional evidence showing Ward's pattern of threatening and harassing behavior since the events charged in Trial 1 was shown at Trial 2. Dickens, Lucas and the magistrate judge testified at Trial 2, but did not testify at Trial 1. Additionally, Tony Self, an inmate at the county jail, testified only at Trial 2. He testified that Ward offered him money to fabricate testimony against the victim.
Unlike the fact pattern in State v. Burke , 287 Ga. 377, 695 S.E.2d 649 (2010), the evidence of Ward's violation of the no-contact bond order on December 3, 2007, was not a single event. Although the jury in Trial 1 acquitted Ward of stalking for events occurring between the dates of September 1, 2007, and November 5, 2007, the jury in Trial 1 did convict Ward of being in possession of tools for the commission of a crime, notably pry bars, with the intent to gain entry into the victim's house. This was evidence, along with the testimony of the magistrate judge, Dickens, Lucas and Self, that was presented during Trial 2, but not during Trial 1, that allowed the jury to return a guilty verdict for the aggravated stalking occurring a month after the events outlined in the 2007 indictment and Trial 1. The jury in Trial 2 was presented evidence from which it could find the "harassing and intimidating" behavior required by OCGA § 16-5-91 (a) that consisted of more than the single event of shipping the book received on December 3, 2007.
Similarly to Daker v. State , 248 Ga. App. 657, 548 S.E.2d 354 (2001), the aggravated stalking charge of the 2008 indictment and Trial 2 was based on a different event occurring at a different time from the events outlined in the 2007 indictment and Trial 1. As noted in Daker , "[i]f we were to accept [Ward's] argument, then it would be impossible for the State to prosecute repeat offenders of the stalking statute as, having once used the evidence to demonstrate a course of conduct, the State would be forever barred from using that evidence again in establishing a subsequent stalking violation. ... [S]talking is, by its very nature, a cumulative crime[.]" Id. at 660 (2), 548 S.E.2d 354. Here, the 2008 indictment and Trial 2, while linking back to evidence of the sequence of events leading up to Ward's November 5, 2007, arrest, focused on his actions subsequent to being released on a no-contact bond order on November 6, 2007. Because there is no violation of double jeopardy principles, I dissent.

Although Lucas testified at Trial 2, he was unavailable to testify during Trial 1 for medical reasons.

This included being told by the victim verbally and in writing, by her lawyer and by local law enforcement.

The magistrate judge did not testify in Trial 1.

Dickens did not testify at Trial 1.